Good morning, Your Honors, and may it please the Court, I am Richard Shore, and I am here on behalf of Appellant Gilbert LLP. Your Honors, this is our second journey to this Court. We are here because the District Court did not follow this Court's mandate in valuing Gilbert LLP's lien for legal services provided to Alpha, that is, Jordan Fishman and his to apply the Campbell County factors, including the contingent nature of the representation and the $26 million results secured by Gilbert LLP, which this Court indicated warranted a substantial enhancement over hourly fees. This Court reminded the District Court that fee-shifting cases were not an appropriate basis to value the lien. In its brief on remand to the District Court, Alpha referred to these substantive rulings as mere suggestions in dicta, and in its ruling, the District Court declined to enhance for these or any other Campbell County factors and again relied on fee-shifting cases. It reached exactly the same conclusion as before, valuing Gilbert LLP's lien for fees at $1,237,720, just 30% of Gilbert LLP's hourly investment in this case. We didn't obligate the District Court to reach a certain result, though, did we? I thought we just told the District Court that the contingent nature of the case was a significant factor to consider. We did not mandate an outcome, as I recall. That's correct. This Court did not mandate a specific outcome, but it did indicate that the recognized rule is that when a matter is handled on a contingency fee basis, counsel is entitled to much more than hourly fees and said that in the circumstances of this case, the contingent nature of the representation should be a significant factor. Does the termination provision in your fee agreement affect your argument on the contingency fee? No, we don't believe that it does because both ALFA and Gilbert LLP and indeed the District Court and this Court have stated that the fee agreement is unenforceable. What the District Court essentially did was say, yes, it's unenforceable, but since the termination provision indicates that Gilbert LLP understood that it would not receive a contingent fee on amounts recovered after one year, that should essentially bar or preclude enhancement in this case. Now, number one, that argument was made to this Court in the prior appeal, and this Court still said that the contingent factor warranted a much larger fee. So this had considered that, still vacated the provision and remanded. In effect, what the District Court did was it enforced the termination provision of an unenforceable fee agreement, but it didn't enforce the entirety of it. It blew pencil. It enforced the portion of the termination provision that says you don't get a contingency fee on amounts recovered after one year, but that provision was dependent upon Gilbert LLP's receipt at the time of discharge of its full hourly basis fees. So we believe that the termination provision, like the rest of the fee agreement, gets set aside and what happens here is that quantum merit applies, what is warranted, what is merited, and that requires under Campbell County an enhancement. If we, what relief are you asking this Court to award? We believe that the appropriate course of action here, following two proceedings before the District Court, a vacater and remand, and now a second appeal, is for this Court to do what it did in the Doe v. Kidd case, which is to decide the fee, to avoid a further remand, to avoid further proceedings below, and a further potential appeal to this Court to bring this matter to a resolution in order to conserve judicial resources. So you recognize the very distinct possibility that if we were simply to remand again, you would receive the same result, or you could conceivably receive the same result? Yes, I think we could, and I think that given that the District Court has demonstrated that it did not follow the mandate of this Court. Well, I think, I continue to think that's a bit of an overstatement. It may not have followed the spirit, but it certainly followed the letter. We said it had to consider the award. We didn't require it to make a difference in the ultimate size of the award because of that. Right. You could say, the District Court could say, I did consider it, simply, but having considered it, I just reached the same result that I did before. I would agree with that as a general proposition, but not in the specifics of this case. And the reason for that is that Alpha argued to this Court that the contingency factor should not lead to an enhancement for two reasons. Number one, there was no recovery before discharge, and number two, the fee agreement precluded an enhancement. Two reasons. Those were the only two reasons it offered, and yet this Court still said in its mandate, yes, consider this factor, but it didn't simply say consider it. It said that it is a recognized rule that a contingent lawyer is entitled to much more than hourlies, and that the fact suggests that in the particular circumstances of this case, this should have been a major factor. And then what did the District Court do? It exercised, arguably, exercised its discretion, which it admittedly has. But I don't believe so, because what the District Court said was, I am not going to enhance for the very two reasons that this Court had already considered, vacated, remanded, and said much more significant factor under the circumstances of this case. So the point being, Your Honor, we would respectfully submit that consider does not mean recognize, but refuse to give any weight to. Given the District Court's recognition of the outstanding result achieved of the contingent nature of the arrangement, we believe it was bound by this Court's mandate to enhance the load star, both for the contingent factor and for the results received factor. I don't believe that the District Court's, that this Court's decision was limited solely to consider these factors. There were substantive rulings about what the factors meant, particularly and in some detail, the contingent factor, but also the results achieved factor. The clear implication of the Court's decision was, if the results achieved were outstanding , then this Court should enhance for that factor. I don't want to overstate it, but I think that is the clear implication. It wasn't simply, show your work, as Alpha contends. Given the facts of this case, do you think it should have factored in as to who the successor lawyers were in this case, in the connection, prior connection with your client? Yes, and we argued that fairly extensively in the first appeal to this Court, and yes, Your Honor, I do believe that that is the case. What essentially is happening here is, while the District Court says this is a dispute between Alpha and Gilbert LLP, we believe this is a dispute between the two law firms. We understand that Weisbrod, Bates, and Copley has the same 40 percent contingency arrangement as we do, and so every dollar that we have Weisbrod, Bates, and Copley, slash Alpha, can convince the District Court or this Court to subtract from Gilbert LLP's fee for their conduct when they were at Gilbert LLP, winds up on their side of the ledger, and we believe that. An interesting thing, yes, because it's just that, just hypothetically, you've got a situation where when I was with you, to boost that up means a different thing, and I think that I appreciate that that's a really tender spot in this case. Yes, I agree, Your Honor. I agree. So what are you saying that, if we assume, am I correct in saying that when we sent it back, something had not been done correctly, and in your mind, you have not given proper weight to the contingency aspect of the case, and you're saying that there's no way that you would consider that, really, and not gone up? Right, and exactly, Your Honor, and I think that was the clear import of the Court's decision, not simply consider and then reject, and certainly not reject on the basis of a rationale that this Court had heard and said, we are still going to vacate and send it back. We think that that is a fundamental flaw in the approach of the District Court. And to continue, Judge Duncan, in response to your question, what should happen here, so consistent with the Doe versus Kidd case, we believe that this Court can and should resolve the fee issue, and the question is how to do that. What we have argued in our brief, and I believe demonstrated through the evidence, is that the appropriate load star here is $3.1 million, not the $1.2 something, $1.24 million that the District Court employed, and the reason, one of the fundamental reasons is that Alpha admitted that the $3.1 million is reasonable. Now, what Gilbert LLP has done is to reduce its claim from, the District Court said it was $4.5 million, we actually thought it was $4.1 million, but whatever it was, something in excess of $4 million, to reduce it to $3.1 million, a very substantial reduction, even though we believe that all of the original amounts are warranted and justified, and I should say on that score, this was a contingency fee case. This is not like a fee shifting case where lawyers might say, look, I know I am going to get a load star at the end of this case. If I bill a lot of hours, I am going to get a bigger load star if I win the case. This is a case where win, lose, or draw, every hour that Gilbert LLP spent on this case was at Gilbert LLP's expense, even if the case was won. It was not going to get a penny more for spending another hour. So every hour that Gilbert spent, Gilbert believed, was contributing to a successful result in this case, and ultimately a successful result was achieved. So the $3.1 million reflects what Alpha said in the fee petition, are reasonable hours, and gets rid of all of the additional hours that Gilbert LLP included post-fee petition in its original request, but then wrote off in order to narrow the scope of the dispute, to streamline these proceedings, to conserve judicial resources. So we believe that is the appropriate amount. We also believe that it is consistent with the Abrams case in this court, where the court said you should not reduce counsel's fee to such a level that no law firm, this is a paraphrase, no law firm would have taken the case at the outset. No responsible law firm would accept a contingency fee case in which it was clearly going to cost, wait potentially years to get paid, take the risk of zero in a case involving tens of millions of dollars in dispute if it knew that the end result could be, not that it receives its contingency fee, not that it receives its hourly fees with an enhancement, that it receives 30 percent or less of its hourly fee investment in the case. That result will discourage contingency fee representation in the Fourth Circuit, certainly in any significant matter. So we believe that the $3.1 million is an appropriate lodestar to use here. It's just maybe a little bit above the midpoint of where we started and where the district court ended up. Well, if Gilbert bargained for the security of an hourly fee arrangement in the event of termination, which happened here, why should it get better than what it bargained for? Well, because what happens when the lawyer is discharged is in Virginia and within the Virginia Supreme Court cases and Fourth Circuit decisions is quantum meruit. And Gilbert did not receive what it bargained for under the termination provision because it did not get years ago when it was discharged in 2011, I believe it was. It did not receive its full hourly rates. What it got was a years-long dispute over an appropriate fee. So Your Honor, may I continue? Yes, you may. There's clear authority, case authority in Virginia that says you can't blue pencil. That is, you can't rewrite a contract to say I'm going to enforce this provision but not that provision. Alpha is not entitled, even if the fee agreement were somehow or a portion of it were somehow still enforced, alpha is not entitled to enforce the no contingent fee after a year provision when it didn't write a check to Gilbert LLP for $4. whatever million it was in hourly basis fees at the time of discharge. May I just finish the response to Judge Duncan's question just very quickly? So if we accept the $3.1 million load star, then the question is, do the Campbell County factors result in an enhancement and as we've discussed, we believe that at the very least the contingent nature of the fee arrangement and the result secured warrants an enhancement. The only evidence in the record on what that enhancement should be are the opinions of Gilbert's experts and the cases that they cite and other authority that they cite saying that just for the contingent factor in these circumstances, an appropriate enhancement is on the order of two to three times. We believe that something in excess of two, if not three, would be appropriate when you have a secured factor and we believe that the court can and should, we respectfully submit order that that should be the remedy in this case in order, as in the Dovey Kidd case, to bring this dispute to an end. Thank you, Your Honors. I'll reserve the balance of my time for rebuttal, if I may. Good morning, Your Honors, and may it please the Court. My name is William Copley and I'm here on behalf of the appellees in this matter, Jordan Fishman and his companies. Your Honors, this Court should affirm the District Court's decision below because the District Court faithfully complied with this Court's mandate and reasonably applied controlling Virginia law, including the Campbell County factors, to determine Gilbert's reasonable rates. Gilbert misreads this Court's mandate as an order directing the District Court to award higher fees, but Judge Duncan, as you pointed out, this Court expressly disavowed making any such ruling. It stated that it could not and did not review the merits and it reaffirmed that such prejudgment would violate this Court's precedence regarding the District Court's broad discretion to determine fees in a case that was decided before it. Well, don't overread my question because I think throughout its opinion, the District Court is very clear about what it's doing. It's shoehorning the County of Campbell factors into its previous analysis and to the extent that it honored what we said. I'm not sure it could be fairly said that it honored the spirit. Well, Your Honor, the one point I would make to that is that when we went back to Judge Ellison in the District Court, one thing that he noted was he said, I considered the County of Campbell factors the first time, but I didn't explain myself. And so the Court of Appeals is right, I have to explain myself. So I think in his mind, he wasn't shoehorning in a preconceived ruling, but rather was explaining the analysis he had already done, but failed to adequately explain to this Court so that it could provide an adequate review. Well, no, actually it said something a little differently. We said, I think it seemed to reapply the Campbell County factors, but whether express application of the Campbell County factors leads to a different result. And that's how it characterized its analysis. Well, Your Honor, I don't think that this Court, it's a fair reading of this Court's opinion to say that it directed the District Court to reach a different result. I think it said that it has to, because this Court said that it could not, this Court made very clear, it said not only that it did not, but it could not review the District Court's decision on the merits, because it had not explained how it applied the relevant factors. So this Court made clear, I believe from the opinion, that it was expressing no prejudgment whatsoever about how the District Court had to weigh and value each of those factors. Well, what about the, what about our comment that the contingent nature of the fee should have been a significant factor? Well, if you read the exact sentence, what it says is the circumstances of this case suggest that it should have been a significant factor in the analysis. But it used the word suggest and analysis, saying you've got to explain to us, if you're not going to make a contingency fee enhancement in this case, under these circumstances, you've got to explain to us why so that we can, so that we can actually review that and analyze it. And I think the District Court did a good job of that, and I think that its analysis, if you look at it, is not only permissible within its broad discretion, but was actually required by Virginia law. And I'd like to explain why. In this, in this Court's opinion, when it quoted Campbell County, it quoted the language that said the District Court was required to consider the nature of the fee arrangement between the parties as part of its quantum narrowed analysis. And it had to consider the entire nature of the fee arrangement, both its contingent component and the component of the, of the fee arrangement that converted this to an hourly rate upon termination. And in this case, the agreement was unambiguous. It said if there is no recovery within 12 months of termination, that Gilbert LLP would be entitled only to an hourly fee. It was Gilbert, not the District Court, that defined 12 months as the threshold for when Fishman's recovery, Mr. Fishman's recovery, was sufficiently proximate in time to give his services to warrant compensation beyond an hourly fee. As a result, what the Court did, at a minimum, was within its broad discretion. This Court has held that there's only abuse of discretion if reasonable persons can't disagree. Certainly a reasonable person could find that it was reasonable to hold the, the, to hold Gilbert LLP to the fee limitations that they promised at the outset of the engagement when they were wooing the client. Think about this if this were a different contract. If this were a contract between a plumber and a homeowner that said, if you have a leak within 12 months of the repair, I'll come back and fix them. Otherwise, there won't be any claim for workmanship. If that was a contract, this Court would have no problem enforcing it. So, the question is, under Virginia law, do law firms have greater rights and do clients have less than a plumber? And the answer to that is clearly no. Virginia law makes clear, if you look at the Virginia rules. But what's the issue here, not about clients, is it? What's your fee? Your Honor, our fee arrangement with our client is not a matter of the record. Well, it's not. So, we don't know what your, but it's very likely a contingency, is it? Your Honor, it's not a matter of record. Okay, very well, very well. But it's, you know, so we don't know whether it's about the client or not. It's fair at best. In this case, it seems like this is a case where you would really look at the contingency in the sense that the prior relationship that the lawyer had with the firm. Don't you think that makes this case even more so that you look at the contingency in nature of it? Your Honor, I don't believe so. Normally, it's a strange law firm, and I mean strange means a different one, that gets the successor. Here it wasn't, was it? I'm not sure I understand the question. Normally, someone else takes up the case, the mantle. It's a firm that has no connection. Here, that's not the case, here is it? No, Your Honor. I mean, we were the ones who, the same attorneys who obtained the jury verdict for Mr. Fishman at Gilbert were the ones that represented him afterwards. The only difference was that the attorneys who handled the judgment enforcement aspect at Gilbert LLP were not us. They had a different attorney handle that, and it was not successful. But Your Honor, I don't think any of that changes the fundamental result that Gilbert has to be limited to the fee that it agreed to accept at the outset of the engagement. Again, going back to the plumber example, if you would enforce it against a plumber, you have to enforce it against a law firm. And the reason is because all of the law says that clients are given extra protections when they contract with lawyers, not fewer, and lawyers are subjected to more scrutiny. Moreover, Your Honor, Gilbert's only response to this is that Heinsman somehow renders the fee agreement inoperative. But the fact that Heinsman says that a discharged law firm can't seek breach of contract fees on a terminated engagement agreement doesn't mean that you ignore the agreement and the fee limitations that the firm agreed to at the outset of the engagement for purposes of quantum merriment. Can you tell me why you think the proper comparison isn't the reasonable rate for D.C. lawyers? Sure. I think that the reason is because that the ethics rules, and this again goes back to the unique nature when a client contracts with a lawyer, it's unlike any other engagement because there are special We're beyond that, aren't we, since the contingency fee agreement is no more? Well, we're not, Your Honor, because the Virginia rules of professional conduct apply regardless of whether or not the fee agreement expires. But why would we defer to the Virginia rules of professional conduct on the question of reasonable rates for an outer Virginia firm? How does that control? Because, Your Honor, the standard rule in this Court, and, you know, it has applied at numerous times in fee-shipping cases, which I understand can be different, but the standard rule is that you have to look at the rates in the jurisdiction and that you cannot apply D.C. rates for litigation that happens in the Eastern District of Virginia even if the lawyer is in D.C. And that was the Grissom case, that was the Robinson v. Equifax case. The question is, is this case different because Mr. Fishman chose a D.C. law firm? But there you still have to ask, was that a known choice? Did Mr. Fishman know at the outset that he was choosing a firm with substantially higher rates, choosing a firm with rates that were twice what similar lawyers charge for similar work in the Eastern District of Virginia? And the answer to that is no. Virginia rule of professional conduct... And we know that how? Because Virginia rule of professional conduct 1.5b requires an attorney at the outset of an engagement to disclose the rates that they charge their client. It is undisputed in this case that Gilbert LLP never disclosed its rates to Jordan Fishman. So Jordan Fishman, who was a tire designer in Florida, had no idea that he was hiring... And did not ask. And did not ask. But again, this is where I think the Virginia rules of professional conduct come in and are important, because the rules put that disclosure obligation on the attorney. It's not the client's obligation to ask. The law is clear that it's the attorney's obligation to disclose what those rates are. And if, in your Plummer analogy, the homeowner didn't ask what the rates were, does that extend, does that analogy extend to the one that you're suggesting now? No. I believe that... Is there some obligation to make that determination? You might. But again, this is where Heinsman legal... So your hypothetical has concrete limits? No, Your Honor. I believe that proves exactly the point that I'm making with the hypothetical, which is that Virginia law gives clients additional protections that are not given to other contracting parties. And that's because the lawyer-client relationship is different than any other. The whole point to... Well, it's different from that of the Plummer. What? Different from that of the Plummer and the homeowner. Yes. Right. And that's the point. If you would enforce this against a homeowner and protect or against a Plummer and protect the homeowner, you have to protect the client under the same circumstances, because the client has more protections, not fewer. Virginia law is clear that it's an ironclad requirement. A law firm, when they are hiring or when they are taking on an attorney, has to disclose the rates it will charge. Gilbert didn't do it. Therefore, it was appropriate for the district court to limit Gilbert to the rates in the Eastern District of Virginia where the work was performed that are customary, because they denied. What Gilbert essentially asked the district court to do was to impute to Mr. Fishman the very knowledge that Gilbert LLP wrongfully withheld in violation of the ethics rule. No, we're at — well, I would suggest it could be viewed as asking due diligence of a seasoned or a savvy consumer. You need a comparator here, and I just don't understand why D.C. wouldn't be an appropriate comparator. Well, again, Your Honor, I think the answer is the rules of professional conduct create an unambiguous obligation on the law firm to disclose their rates. And the only reason it would be fair to oppose D.C. rates rather than EDVA rates is that the client made a choice. We're not talking about a dispute between the client. But we are. The only claim that they have is against Mr. Fishman. They don't have a claim against my law firm. So why is it unreasonable? Because you're right, the Virginia law does try to protect the client by — it has to be a reasonable fee, right? It has to be a disclosed fee. Well, so you're saying that it's zero if you don't disclose it? No, I'm saying that you would then have to look at — What's reasonable. What's reasonable for the jurisdiction. That's what I — oh, you add jurisdiction. Your Honor, I don't believe I do. Because if you look at Rule 1.5A, it says that it discusses reasonable rates in the locality. And so it is talking about where the work is performed. Well, it's more than that. You mean to tell me that you hire in a personal injury case the best known personal injury lawyer in Florida. I know there's one, I don't want to go name it, but well known. And you go out and seek that firm because you know their reputation. You live in Virginia. And you have an agreement like this and you fire them and then you go out and get somebody else and then you have the judgment. You mean to tell me that firm would be limited to what someone in Virginia makes who maybe had two or three PI cases before and you went out and sought? That would be reasonable? Two points, Your Honor. I believe under Virginia law that if the lawyer did not disclose at the outset that he had a higher rate than other attorneys and then just tried to charge that higher rate, I believe he would have a problem and it would not automatically be enforceable. But more importantly, Your Honor, there was a specific factual finding by the district court in this case. The district court found that Gilbert LLP presented absolutely no evidence whatsoever that its attorneys had skill, experience, or reputation that would justify an enhancement beyond what the lawyers in the Eastern District of Virginia that charge $275 to $400 an hour do the same work. There was a specific factual finding by the district court that has not been challenged for clear error. So in this case, that hypothetical, while I concede that the reputation might be a factor to consider, Your Honor, it does not excuse a failure to disclose rates. And here there was no evidence that they actually had a type of reputation or skill that would justify the enhancement. So you concede that in a different case, one could make that case and you say it's not made here? Yes, Your Honor. I'm not going to suggest. In fact, the Kimball County factors expressly state that the skill, experience, and reputation of the lawyers, all are factors that you should consider in setting a rate for quantum merit fees. I absolutely agree with that. The problem here is that the district court found that Gilbert presented no evidence whatsoever on that point. Your Honor, I also would like to address... What about the verdict they got here? Would that be evidence? The verdict they got here? Yes. Well, Your Honor, I believe that's conflating the result security. And here's an important point about the verdict. Hey, would somebody in your firm be a star witness for them in proving that case? I don't understand that question. What I'm saying is that you said that in order to prove that they have these extra skills and great lawyers, perhaps somebody in your firm who worked for that firm would say you'd be an exhibit to how great we are, right? Because you once were the great lawyer on that side. Well, Your Honor, I mean, we were the lawyer on that side, but they still had the burden to demonstrate. But you're a part of their evidence, though. You know what I'm saying? You've got a star lawyer. You're the star lawyer to help them get the verdict. Now you're over here. Wouldn't you have to be a witness for them to say how great they were and get that verdict? Well, Your Honor, I'm going to answer that question. Wouldn't you be an expert testimony for them to how great they were to justify having the premium for that? Would you not be? Your Honor, I think the skill and experience that I had doing trademark cases, which was virtually none, I'm sorry, copyright cases before this case, might be a relevant factor. But Your Honor, they presented no evidence of that. They could have presented evidence on But you would have been available for them if, for example, they had asked for you to do that? They didn't try to take our deposition. They could have deposed me. They didn't ask for that. You don't think that raises some kind of interesting situation? Your Honor, I don't think it's relevant to any of the Campbell County factors. None of the Campbell County factors apply differently based on whether or not That might be a way they could prove that you said that's what Judge Ellis said they didn't have. So that may have been a way they would have that. Correct? I mean, Your Honor, the fact of the matter is they had the burden to establish the reasonableness of their fees and the basis for any enhancement, and they presented no evidence on that factor whatsoever. Okay. The other point I would make is that regarding the Just one moment. The other point I would make, Your Honor, regarding rates is that, you know, when this Court One of the issues that Gilbert takes issue with is that the district court relied on fee-shifting cases. But I think that was clearly appropriate in this case because the district court, what this court said is that fee-shifting cases aren't automatically applicable in determining rates because there's a difference because the lawyer chooses, the client chooses the lawyer. But this is where the knowing part comes in. That's only a difference if the client knows they're choosing a lawyer with higher rates. And that's why the failure to disclose was so significant. And, Your Honor, because of that, I think the Court was well within its discretion to apply the Eastern District of Virginia rates. I want to touch briefly, though, on this issue where Gilbert says that this Court should apply a multiplier to the hours in this case. And that's clearly inconsistent with, it'd be a violation of Virginia law, the ethics rules, and this Court's precedent. It's a violation of Virginia law and Virginia rule of professional conduct 1.5 to allow an attorney to get two times its hourly rate when he expressly contracted at the outset of the engagement to receive only one time. Moreover, the multiplier that they're asking for is really a backdoor analysis toward the same amount of, as a contingency fee. And Heinsman specifically defines quantum merit as the value of services rendered, not two times the value of services rendered. When they originally said they wanted 40 percent of the $15.5 million settlement, which is approximately $6 million. On remand, Gilbert has reduced its hourly rate by 40 percent, therefore confirming all of the criticisms that this Court had of their excessive over-billing. And now, though, it says that even though that's a very common phenomenon, isn't it? Reducing rates in response to client concerns. I'm not sure I could accept that as some sort of concession. Well, Your Honor, I don't. When they originally. That's what you were proffering. Well, Your Honor, when they originally seek 10,955 hours, and then on remand, reduce that and say we're only seeking 60 percent of those hours. It may just be that they are attempting to be accommodating. I don't think you can ask us to read much into that. Your Honor, fair enough. The point they made to the district court is that it reasonably could reduce their hours by 40 percent. But that doesn't get you very far. That doesn't mean anything. That doesn't mean that they are conceding the appropriateness of it. Your Honor, I. I understand your point. Okay. The point, though, on the multiplier they're seeking is that, you know, they, on remand, they reduced their hours to 3.1 million, but then they said they wanted a two-point, a two-times multiplier, which not coincidentally produces the same $6 million result that Heisman says they can't get as a contingency fee. It's exactly the same result that produces exactly the same award that produces exactly the same cumulative results. I don't know that that. Part of the problem that I'm having with your argument is that we have to accept that the district court heard what was clearly a pretty pointed suggestion and somewhat grudgingly worked its way back to the identical result. Now, there are inferences that can be drawn from that as well, but you would not have us draw those. So I'm not sure you can ask us to draw favorable inferences to you from facts that can just as easily be explained otherwise. Fair enough, Your Honor. But on this argument, I'm not asking the court to draw inferences. What I'm saying is that the award they seek produces all of the same prohibited results that Heisman prohibited. And the result that we got from the district court presented produced the exact result that was before us before. Your Honor, and that may be true. No, no, no. That is true. Fair enough, Your Honor. But the point I want to make is that the result they're asking for is directly contrary to Heisman because it produces exactly the same value as the contingency fee, which means it deters clients from discharging attorneys in exactly the way that Heisman prohibits. It requires the client to pay two contingency fees, not one, and that it's based on the amount secured, which is exactly what Heisman prohibits. This Court cannot award a multiplier consistent with Virginia law. It would make a mess of Virginia law and require this Court to completely rewrite what has been Virginia law for a century. Your Honor, we believe that the district court's decision honored this Court's mandate and was, at least when it exercised judgment, a matter about which reasonable minds could disagree, and we ask this Court to affirm. Thank you, Your Honor. Thank you, counsel. I'm sure you have a few minutes left. Your Honors, I'd like to address a number of points that Mr. Copley made. First, he says that what Heisman and Campbell County say is that you have to look at the nature of the fee arrangement, and here the nature of the fee arrangement included the termination provision that said hourly fees if there's no recovery, contingent recovery within one year. The problem with that is, number one, what every single case dealing with a discharged attorney says is you look at the nature of the fee arrangement, the Campbell County factor, and the only thing they're ever asking the question about is was the fee agreement, was the fee arrangement hourly, contingent, or was it hourly? Here, the fee arrangement was contingent. It was not hourly. And the termination provision then said, well, if you terminate, you know, there's this and this and this happened. The problem with that, and, Judge Floyd, this goes to your earlier question, is what happens on termination under Virginia law is determined by Heisman and Campbell County, not by what the parties may have agreed to. And what Heisman and Campbell County say is quantum merit. Okay? If we had put into our engagement letter, if Gilbert L.P. had put into its engagement letter that on termination, the firm will still receive a contingent fee, okay, and Gilbert L.P. attempted to enforce that provision. Well, I thought that Heisman and Campbell only addressed retainer agreements with fewer contingency fee agreements. Isn't that what they were addressing? That Heisman and Campbell only addressed retainer agreements with fewer contingency fee agreements. In the Heisman case, there was a contingency fee agreement. Campbell County actually, if you read through all the detail of that case, there was effectively no effective fee agreement in place there. But those cases are both cited in the context where there is a contingent arrangement and what happens on termination. And the reason for that is that, you know, if you're receiving hourly fees, you receive hourly fees in real time. When you get to the discharge, you've gotten your hourly fees. Maybe there's something still outstanding and you have to deal with that. But just to finish the point, if the fee agreement had said on termination, Gilbert still receives a contingent fee, I believe that Alpha would have taken the position that that's unenforceable. You get quantum merit and then we'd be in this conversation. It would not have conceded that, okay, the termination provision says we get a contingent fee. So we pay the contingent fee. In other words, it's Alpha is essentially trying to create a heads, we win, tails, you lose scenario. In terms of what the contingent fee is here. Can I ask you a question? Yes, Your Honor. And I'll give you time back. But you were, hypothetically, you said if you had tried to have a contingency fee, notwithstanding a termination, it would be categorically just denied. But just again, going back to the interest of the client, that's supposed to be the whole thing in this case. A contingency fee after termination, couldn't that be in the best interest because, for example, doesn't the client owe you a fee of some on your hourly no matter what might happen after you, the case goes, they discharge you? For example, they terminate you and you put your hours in. Legally, are you entitled to those fees no matter what happens to their case afterwards? Success affirmed, loses it, for example. No verdict, for example. Are you entitled to sue them for your legal fee? Yes, not necessarily for hours, for quantum merit. For quantum merit, right? No matter what happens to the case. Correct. So a contingency fee really could be in the best interest of the client because you could say, listen, you discharged me, but I'll take my fee as a contingency. Still, if you lose with the new firm, you owe me nothing. Right. I don't see how that's draconian at all to the client. In that circumstance, that may well be the case. And quantum merit factors in the contingent nature of the arrangement, the results secured, et cetera. Now, here the result secured is a jury verdict that was reduced to a judgment by the district court for $26.63 million. And that is what the amount that is merited should be determined based on. And, indeed, that's what this court said. This court said you look at the result secured where it's contingent, you enhance for those factors if there is an outstanding result secured, if it is a contingent arrangement. I want to just touch on what the contingency fee is here. And it goes, Judge Gregory, to your question. Gilbert LP was awarded $1.24 million. Just based on what we know in terms of settlements, Weisbrod, Mataze, and Copley received in excess of $5 million. Depending upon what happened in subsequent settlements, it could receive up to $9 million in total, a fundamentally unjust result. We receive $1.24 for getting the jury verdict. And Weisbrod, Mataze, and Copley receives up to $9 million. There is an extended colloquy with Mr. Copley on rates for D.C. lawyers. I just want to emphasize we are not seeking D.C. rates. All of the evidence in the record is what are reasonable rates in the Eastern District of Virginia. We have an affidavit from Stephen Robinson, a McGuire Woods lawyer practicing for decades in the Eastern District, going through and saying that Gilbert's rates are within reasonable rates in the Eastern District of Virginia. We have the Virginia Metro case, the Middle East cases, which have essentially a matrix saying that with the exception of maybe one or two lawyers with relatively modest amounts of time, the rates that Gilbert Allopee charges are within reasonable rates in the Eastern District of Virginia. The only thing that we use our rates purely for is to establish the standing of the lawyers, the skill and experience, where in Rum Creek Coal Sales, this Court said that the best way to establish those two factors is what do hourly fee clients of the law firm ordinarily pay. Mr. Little and a partner in Gilbert Allopee submitted a declaration demonstrating that hourly fee clients who have paid for tens of thousands of hours of Gilbert Allopee time regularly pay those rates. And that goes also to Mr. Copley's statement that the district court said that we provided no evidence of the skill and experience called for the standing of the lawyers, which were by the way, two factors that this Court said in considering appropriate hourly rate should be considered. Rum Creek Coal Sales says that you do it on the basis of what the firm ordinarily charges its hourly fee clients and we had an affidavit notwithstanding that the district court said there was no evidence. We had an affidavit saying that these are the rates ordinarily charged. And as to whether Mr. Fishman knew about the hourly rates, ALFA dramatically misquotes the Virginia ethics rules. It says the Virginia ethics rules say that you have to disclose the rate of the fee. It says the rate of the fee. That is actually put in quotes. What the rule says is that the law firm is required to disclose the amount, basis, or rate, not the rate of the fee, the amount, basis, or rate of the fee. This was a contingent fee arrangement. Gilbert Allopee disclosed the basis on which the contingency would be calculated. It was not required for an arrangement that was contingent to disclose the rates. And it wouldn't have made any difference if it did. Common sense tells you that Mr. Fishman would have been looking at what am I going to pay in a contingency, not what happens if I fire these guys. He didn't have in mind firing us. And we know in the event that that is true because at the time of the fee petition, Mr. Fishman obviously knew the rates because they were a part of the fee petition and Mr. Mattez said the rates were reasonable and Alpha said in its fee petition the rates were reasonable. Mr. Fishman didn't look at the rates at that point in time and say, wait a minute, these are unreasonable rates. I can't agree to this. On the contrary, he, through his lawyers and through his petition, argued that the rates were reasonable. So the discussion about the rates weren't disclosed is based on a dramatic misquotation of the ethics rule and an argument about what the significance of the failure to disclose the rates meant in this case. That really is a complete red herring. I think we're even now in terms of time. I'm sorry, Your Honor, I didn't notice. I'll give you a 30-second wrap-up. I guess I simply would say in terms of the reduction, the reduction to $3.1 million was really intended to be a compromise position in order to streamline this dispute and allow the court to more easily reach a resolution here. It's not an admission of anything by our firm. Thank you very much, Your Honor. Thank you.
judges: Roger L. Gregory, Allyson K. Duncan, Henry F. Floyd